IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| PAUL H. ESPERSEN AND<br>PEGGY ESPERSEN,<br><br>Plaintiffs,<br><br>vs.<br><br>THE ZIA COMPANY; REGENTS OF THE<br>UNIVERSITY OF CALIFORNIA;<br>OWENS-ILLINOIS, INC., CROWN CORK<br>AND SEAL COMPANY, INC; HONEYWELL<br>INTERNATIONAL, INC; HONEYWELL, INC;<br>and METROPOLITAN LIFE INSURANCE<br>COMPANY,<br><br>Defendants. | Civil Action No._____<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COME NOW Plaintiffs PAUL H. ESPERSEN and PEGGY ESPERSEN, and for their Civil Complaint against Defendants, state as follows:

### I. PARTIES

1. Paul H. Espersen and Peggy Espersen reside in Wake Forest, North Carolina.

2. Defendant The Zia Company is a company organized and existing and by virtue of the laws of the state of Delaware and may be served with process by service on its registered agent, Leslie L. Keener, 106 N. First Street, Belen, New Mexico 87002.

3. Defendant Regents of the University of California is a company organized and existing and by virtue of the laws of the state of California and may be served with process by service on its registered agent, Corporation Service Company, 123 East Marcy Street, Suite 101, Santa Fe, New Mexico 87501.

4. Defendant Owens-Illinois, Inc., is a corporation organized and existing under and by

virtue of the laws of the State of Ohio with its principal place of business in Ohio, but no longer maintains a registered agent for service of process in this state. Therefore, it is hereby requested that service of citation be issued and that this defendant shall be served by serving the Secretary of State of the State of New Mexico who shall then forward a copy to Defendant at One Michael Owens Way, Perrysburg, Ohio 43551-2999.

5. Defendant Crown Cork and Seal Company, Inc., is a company organized and existing by the virtue of the laws of the state of New York with its principal place of business in the state of Pennsylvania and may be served with process by service on its registered agent at Marlene Custance, 555 W. 115th Street, Alsip, Illinois 60803.

6. Defendant Honeywell International, Inc. is a company organized and existing by the virtue of the laws of the state of Delaware with its principal place of business in the state of New Jersey and may be served with process by service on its registered agent at Corporation Service Company, 123 East Marcy Street, Suite 101, Santa Fe, NM 87501.

7. Defendant Honeywell, Inc., is a company organized and existing by the virtue of the laws of the state of Delaware with its principal place of business in New Jersey and may be served with process by service on its registered agent at 123 East Marcy Street, Suite 101, Santa Fe, NM 87501.

8. Defendant Metropolitan Life Insurance Company is a company organized and existing by the virtue of the laws of the state of Delaware with its principal place of business in the state of New York and may be served with process by service on its registered agent at CT, Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

## II.  **JURISDICTION AND VENUE**

9. This lawsuit arises in part under the laws of New Mexico and in part under the laws

of the United States. Pursuant to 28 U.S.C. § 1332, this District Court of New Mexico has original jurisdiction over this lawsuit, a civil action with a matter in controversy exceeding the sum of $75,000.00, based upon the complete diversity of the parties. Additionally, 42 U.S.C. § 7385 *et seq.* provides the basis for this Court's jurisdiction over Plaintiffs' claims against Defendants The Zia Company and Regents of the University of California.

### III. BACKGROUND

10. Paul Espersen was employed by the University of California when he worked as an Electronic and Instrumentation Technician and a Furnace Helper at Los Alamos National Laboratory (LANL) in Los Alamos, New Mexico from 1958 through 1964.

11. Defendant Regents of the University of California has managed and operated LANL under a contract with the United States Department of Energy since 1943.

12. The Zia Company was an independent contractor at LANL and by contract with the Regents of the University of California provided certain functions, including by not limited to, management, administration, equipment installation, building construction, demolition, maintenance, custodial and other service.

13. Defendants Owens-Illinois, Inc., Crown Cork & Seal Company, Inc., Honeywell International, Inc., and Honeywell, Inc., themselves or through their predecessors in interest, supplied, sold or distributed asbestos-containing products to the LANL and/or other work sites where Paul H. Epsersen worked and was exposed to respirable asbestos fibers from such products.

14. Plaintiff, PAUL H. ESPERSEN, served in the U.S. Army National Guard from 1954 through 1955 and was stationed in Fort Gordon, Georgia. Plaintiff was then employed from 1956 through 1957 at American Smelting and Refining as a Laborer in El Paso, Texas. Plaintiff

was then employed from 1958 through 1964 at Los Alamos National Laboratory as an Electronic and Instrumentation Technician and a Furnace Helper.  Plaintiff was then employed from 1965 through 1990 at IBM at various locations as a Technical Expert and then employed from 1990 through 1995 at Los Alamos National Laboratory in Technical Support located in Los Alamos, New Mexico.  Plaintiff also performed automotive repairs during the 1960's and 1970's and performed various rehab/home remodeling projects in the 1950's through the 1970's.  During the performance of his duties, Mr. Espersen would work with and around asbestos-containing products.  Mr. Espersen inhaled substantial quantities of asbestos fibers with no knowledge of the deadly effects of asbestos.  During the performance of his occupational duties, through non-occupational work and in other ways, Mr. Epsersen would work with and around asbestos-containing products and inhale and/or otherwise ingest asbestos fibers.

15. On or about August 13, 2018, Mr. Espersen was diagnosed with mesothelioma caused by his exposure to asbestos decades earlier.

## IV. CLAIMS FOR RELIEF

### 1. Negligence

16. Plaintiffs repeat and re-allege the foregoing paragraphs 1 through 15 as if fully set forth herein.

17. The Zia Company and Regents of the University of California had a duty to exercise reasonable care to protect workers at LANL from dangerous conditions and activities occurring at the workplace and to otherwise produce such workers with a safe place to work.

18. The Defendants controlled, operated and/or directed all maintenance or construction activity in which Paul H. Epsersen was exposed to respirable asbestos fibers.  These Defendants knew, or in the exercise of ordinary or reasonable care should have known, that their asbestos

containing products and/or machinery were poisonous and highly harmful to Mr. Espersen.

19. These Defendants' actions and inactions constitute a breach and failure of their duties to Paul H. Espersen in several respects, including but not limited to the following:

   a. Failing to provide Paul H. Espersen with a safe workplace;

   b. Failing to warn Paul H. Espersen of the foreseeable hazards of working with and around asbestos and asbestos containing products;

   c. Failing to provide adequate personal protective equipment to protect Paul Espersen from respirable asbestos fibers;

   d. Failing to use suitable substitutes for asbestos; and/or

   e. Otherwise failing to take reasonable steps to prevent asbestos exposure in the workplace.

20. Furthermore, the negligence of the remaining Defendants was also a proximate cause of the injuries of Paul H. Espersen. Defendants as suppliers, miners and/or distributors of the asbestos and/or asbestos-containing products knew, or in the exercise of ordinary or reasonable care should have known, that their products were poisonous and highly harmful to Plaintiff's health. The Defendants' products were sold, distributed and placed in the stream of commerce without adequate warning of their deadly potential.

21. Defendants failed in their duty to protect the foreseeable users of their products from known or reasonably knowable dangers of their products in several respects, including but not limited to, the following:

   a. Failing to adequately warn the users, or their intermediaries of the hazards of their products;

   b. Failing to design their products with reasonable available substitutes for asbestos; and

   c. Affirmatively misrepresenting the safety of their asbestos and/or asbestos-containing products.

22. Mr. Espersen suffered injuries as a direct and proximate result of all Defendants' breaches. Mr. Espersen experiences and continues to experience great pain and suffering and anguish as a direct and proximate result of Defendants' actions and inactions.

23. Peggy Espersen and her son will be deprived of the services, comfort and consortium that Mr. Espersen provided them prior to his illness. These injuries were foreseeable and a direct and proximate result of these Defendants' actions and inactions.

24. WHEREFORE, Plaintiffs pray judgment be entered against the Defendants for a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, which will fairly and reasonably compensate for the Plaintiffs' injuries.

## 2. **Willful Misconduct**

25. Plaintiff repeats and re-alleges the foregoing paragraphs 1 through 24 as if fully set forth herein.

26. Without just cause or excuse, The Zia Company and Regents of the University of California, by and through their authorized representatives, agents or employees, intentionally committed one or more of the actions or inactions set forth above.

27. These Defendants reasonably could have expected that Mr. Espersen would be injured or killed as a result of those actions and inactions.

28. These Defendants expected Mr. Espersen injuries and/or death to result or utterly disregarded the consequences of their actions and inactions.

29. As a direct and proximate cause of these Defendants' actions or inactions, Mr. Espersen was injured, endured grave pain and suffering, and ultimately will pass away.

30. Peggy Espersen and her son are thus deprived the services, comfort and consortium that Mr. Espersen provide them prior to his illness. These injuries were foreseeable and a direct

and proximate result of these Defendants' action and inactions.

31. WHEREFORE, Plaintiffs pray judgment be entered against the Defendants for a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, which will fairly and reasonably compensate for the Plaintiffs' injuries.

### 3. Strict Liability

32. Plaintiffs repeats and re-alleges the foregoing paragraphs 1 through 31 as if fully set forth herein.

33. The defective condition of the asbestos products and/or machinery rendered such products unreasonable dangerous. They were in this defective condition at the time they left the hands of the Defendants.

34. There was a defect in the marketing of the asbestos containing products and/or machinery at the time they left the possession of these Defendants. Defendants failed to adequately warn of the asbestos containing products and/or machinery's dangers which rendered them unreasonably dangerous.

35. There was a defect in the design of the asbestos containing products and/or machinery at the time they left the possession of the Defendants, which rendered them unreasonably dangerous.

36. The defective condition, defective marketing, unreasonably dangerous nature, the failure to warn, and the Defendants' actions or inactions were a producing cause of Mr. Espersen's injuries.

37. Peggy Espersen and her son are thus deprived the services, comfort and consortium that Mr. Espersen provided them prior to his illness. These injuries were foreseeable and a direct and proximate result of these Defendants' actions and inactions.

38. WHEREFORE, Plaintiffs pray judgment be entered against the Defendants for a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, which will fairly and reasonably compensate for the Plaintiffs' injuries.

### 4. Exemplary/Punitive Damages

39. Plaintiff repeats and re-alleges the foregoing paragraphs 1 through 38, as if fully set forth herein.

40. The actions and inactions of all Defendants, individually, collectively, or through the cumulative conduct of their agents and employees, was of such character as to make the Defendants subject to exemplary damages.

41. The conduct of all Defendants was malicious, willful, reckless, wanton, fraudulent or in bad faith and otherwise indifferent to the rights, welfare, and safety of Paul H. Espersen, Peggy Espersen and their son.

42. As a result of the conduct of all Defendants, Plaintiff herein seeks exemplary damages in such an amount as to be found to be proper under the facts and circumstances.

43. Plaintiff hereby invokes the discovery rule and would show unto this Court that Mr. Espersen did not know he had an asbestos related disease nor should he have known prior to three years before filing this lawsuit.

44. WHEREFORE, Plaintiffs pray judgment be entered against the Defendants for a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, which will fairly and reasonably compensate for the Plaintiffs' injuries.

### 5. Conspiracy

45. Plaintiff repeats and realleges the forgoing Paragraphs 1 through 44 as if fully set forth herein.

46. During the course of his employment, Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers and/or asbestiform fibers emanating from certain products they were working with and around which were manufactured, sold or distributed by the Defendants named in Count I above.

47. The Defendants, including METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL INC., and/or their predecessors-in-interest, knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities, including Johns-Manville Corporation, Union Asbestos & Rubber Company, Pittsburgh-Corning Corporation and United States Gypsum, to cause Plaintiff's injury, disease and illness by exposing Plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose himself to said dangers. In this connection, Plaintiff has sued METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL INC., in their capacities as co-conspirators. Defendants committed the above-described wrongs, some of which wrongful conduct occurred at the locations above, by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

48. In furtherance of said conspiracy, Defendants, METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL INC., performed the

following overt acts:

- (a) for many decades, Defendants METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL INC., individually, jointly, and in conspiracy with each other and other entities, have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic and potentially deadly;

- (b) despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other and other entities, fraudulently, willfully and maliciously:

    - (1) withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

    - (2) caused to be released, published and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated and misleading; and

    - (3) distorted the results of medical examinations conducted upon Plaintiff and workers such as Plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm to which Plaintiff and workers such as Plaintiff have suffered.

- (c) In addition, certain of the defendants, including but not limited to METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL INC., contrived, combined, confederated and conspired through a series of industry trade meetings and the creation of organizations such as the Air Hygiene Foundation (later the Industrial Hygiene Foundation) to establish authoritative standards for the control of industrial dusts which would act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect workers such as Plaintiff from contracting an asbestos disease or cancer.

  (d)  In furtherance of said conspiracies, Defendants and/or their co-conspirators contributed to cause the establishment of a Threshold Limit Value for asbestos exposure, and contributed to the maintenance of such Threshold Limit Value despite evidence that this supposed "safe" level of exposure to asbestos would not protect the health of workers such as Plaintiff even if complied with.

  (e)  As the direct and proximate result of the false and fraudulent representations, omissions and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose himself to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestiform fibers.

49. Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators were in a position of superior knowledge regarding the health hazards of asbestos and therefore the Plaintiff and others deciding to use said asbestos-containing products to which Plaintiff was exposed had a right to rely and did rely on the published reports commissioned by the Defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

50. As a direct and proximate result of Defendants' intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, upon which data the Plaintiff reasonably relied, the Defendants caused asbestos and asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to be used by Plaintiff and Plaintiff inhaled or otherwise ingested hazardous asbestos dust, and/or will inhale or ingest hazardous asbestos dust, resulting in injuries.

51. Additionally and alternatively, as a direct and proximate result of Defendants' actions

11

and omissions as described above, the Plaintiff was caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Plaintiff by depriving the Plaintiff and workers such as Plaintiff, of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid exposure to asbestos dust.  Because of this ignorance on the part of the Plaintiff, Defendants' failure to warn, Defendants' concealment from the Plaintiff of the alteration of their published test results, and the actions and omissions and concerted design and conspiracy of METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL INC., and others, all as described above, the Plaintiff was exposed to asbestos and asbestos-containing products and/or machinery containing or calling for the use of asbestos and/or asbestos-containing products used at his places of employment and/or his family members' place employment and has inhaled or otherwise ingested hazardous asbestos dust resulting in his developing mesothelioma.

    52. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants mentioned above, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers and/or asbestiform fibers causing Plaintiff to develop mesothelioma, which will ultimately lead to his death; Plaintiffs have been compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of Plaintiff's asbestos-induced disease and conditions; Plaintiff has experienced, and will continue to experience now and in the future, great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers and/or asbestiform fibers; that as a further result of his asbestos-induced disease and conditions, the Plaintiff has been hindered, and will continue to be hindered now and in the future, from pursuing his normal course of life; further, by reason of the sickness of the Plaintiff, his family

has been deprived, and will continue to be deprived, of his means of support and society.

WHEREFORE, Plaintiffs pray judgment be entered against the Defendants for a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS which will fairly and reasonably compensate for the Plaintiffs' injuries.

## V. **PRAYER**

**WHEREFORE,** Plaintiffs pray that judgment be entered in their favor and against the Defendants jointly and severally, as follows:

All damages allowed under New Mexico tort law;

All damages allowed under The Energy Employees Occupational Illness Compensation Program Act ("EEOICPA");

Costs of suit and attorneys' fees as allowed by law;

Pre-judgement and post judgment interest as allowed by law; and

For such further relief as the Court and fact-finder deems just and proper.

Respectfully submitted,

**KELLY DURHAM & PITTARD, LLP**

By: _____
    Justin R. Kaufman
    Rosalind B. Bienvenu
505 Cerrillos Rd., Suite A209
Santa Fe, New Mexico 87501
Telephone:  (505) 986-0600
Facsimile:  (505) 986-0632
jkaufman@kdplawfirm.com
rbienvenu@kdplawfirm.com

Luke Pfeifer (*pro hac vice pending*)
**FLINT LAW FIRM LLC**
222 E. Park St., Suite 500
Edwardsville, IL  62025

                                        Telephone:  (618) 288-4777
                                        lpfiefer@flintlaw.com

***Attorneys for Plaintiffs***