## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**PAUL H. ESPERSEN AND PEGGY ESPERSEN,**

      **Plaintiffs,**

vs.                                                                    **CIVIL NO. 1:18-CV-00966-JCH-JHR**

**THE ZIA COMPANY; et al.,**

      **Defendants.**

## JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN

Pursuant to FED. R. CIV. P. 26(f), a meeting was held on December 20, 2018 at 9:00 a.m. MST and was attended by:

Justin R. Kaufman and Luke P. Pfeifer for Plaintiffs;

Tyler Cuff for Defendant Metropolitan Life Insurance Company;

Robert P. Warburton for Defendant Crown Cork and Seal Company, Inc.;

Tonn K. Petersen for Defendant Honeywell International, Inc.; and

Laura Ackermann for Defendant Honeywell, Inc.

Justin D. Rodriguez for Defendant The Zia Company[1]

## NATURE OF THE CASE

This is an asbestos products liability case filed by Plaintiff Paul Espersen and his wife Peggy Espersen. Plaintiffs have filed claims related to Paul Espersen's asbestos exposure against multiple defendants, including The Zia Company, Crown Cork and Seal Company, Inc., Honeywell International, Inc., Honeywell, Inc., and Metropolitan Life Insurance Company.

---

[1] The Zia Company had not entered an appearance in this matter as of December 20, 2018, and therefore did not attend or participate in the meeting.

## AMENDMENTS TO PLEADINGS AND JOINDER OF PARTIES

Plaintiffs intend to file: <u>Unknown at this time.</u>

Plaintiffs should be allowed until **02/01/2019** to move to amend the pleadings and until **02/01/2019** to join additional parties in compliance with the requirements of Fed. R. Civ. P. 15(a).

Defendants intend to file: <u>Unknown at this time.</u>

Defendants should be allowed until **03/01/2019** to move to amend the pleadings and until **03/01/2019** to join additional parties in compliance with the requirements of Fed. R. Civ. P. 15(a).

## STIPULATIONS

The parties hereto stipulate and agree that venue is properly laid in this District; that the United States District Court for the District of New Mexico has jurisdiction of the parties and the subject matter.

The parties are willing to further stipulate to the following facts: <u>N/A.</u>

The parties further stipulate and agree that the law governing this case is: New Mexico law and federal law.

## PLAINTIFFS' CONTENTIONS:

On August 13, 2018, Mr. Espersen was diagnosed with mesothelioma caused by asbestos exposure. Mr. Espersen, served in the U.S. Army National Guard from 1954 through 1955 and was stationed in Fort Gordon, Georgia. Plaintiff was then employed from 1956 through 1957 at American Smelting and Refining as a Laborer in El Paso, Texas. Plaintiff was then employed from 1958 through 1964 at Los Alamos National Laboratory as an Electronic and

Instrumentation Technician and a Furnace Helper. Plaintiff was then employed from 1965 through 1990 at IBM at various locations as a Technical Expert and then employed from 1990 through 1995 at Los Alamos National Laboratory in Technical Support located in Los Alamos, New Mexico. Plaintiff also performed automotive repairs during the 1960's and 1970's and performed various rehab/home remodeling projects in the 1950's through the 1970's. During the performance of his duties, both occupationally and avocationally, Mr. Espersen would work with and around asbestos-containing products. Mr. Espersen inhaled substantial quantities of asbestos fibers with no knowledge of the deadly effects of asbestos.

During the performance of his occupational duties, through non-occupational work and in other ways, Mr. Epsersen would work with and around asbestos-containing products and inhale and/or otherwise ingest asbestos fibers from products manufactured by Defendants Owens-Illinois, Inc.; Crown Cork and Seal Company, Inc.; Honeywell International, Inc.; and Honeywell, Inc.

Defendant Regents of the University of California managed and operated Los Alamos National Laboratory (LANL) under contract with the United States Department of Energy. Defendant The Zia Company was an independent contractor of LANL and by contract with the Regents of the University of California provided certain functions, including by not limited to, management, administration, equipment installation, building construction, demolition, maintenance, custodial and other service. The Zia Company's maintenance of asbestos-insulated and asbestos-containing equipment at LANL caused Mr. Espersen to be exposed to and inhale asbestos fibers which caused or contributed to the development of his mesothelioma.

- Count 1 of Plaintiffs' Complaint pleads a claim of negligence against Defendant The Zia Company for breaching its duty to exercise reasonable care to protect workers at LANL from dangerous conditions and activities occurring at the workplace and to produce such workers with a safe place to work. Count 1 also pleads a claim of negligence against the defendants Crown Cork and Seal Company, Inc., Honeywell International, Inc., Honeywell, Inc. (suppliers, miners and/or distributors of the asbestos and/or asbestos-containing products) that knew, or in the exercise of ordinary or reasonable care should have known, that their products were poisonous and highly harmful to Plaintiff's health. These Defendants' products were sold, distributed and placed in the stream of commerce without adequate warning of their deadly potential.

- Count 2 of Plaintiffs' Complaint pleads a claim of willful misconduct against The Zia Company.

- Count 3 of Plaintiffs' Complaint pleads a claim of strict liability against defendants Crown Cork and Seal Company, Inc., Honeywell International, Inc., Honeywell, Inc. (suppliers, miners and/or distributors of the asbestos and/or asbestos-containing products) as the defective condition of the asbestos products and/or machinery rendered such products unreasonably dangerous.

- Count 4 of Plaintiffs' Complaint pleads a claim for punitive damages as a result of Defendants' (The Zia Company, Crown Cork and Seal Company, Inc., Honeywell International, Inc., Honeywell, Inc., and Metropolitan Life Insurance Company) malicious, willful, reckless, wanton, fraudulent or in bad faith and otherwise indifferent conduct.

- Count 5 of Plaintiffs' Complaint pleads a claim for conspiracy against Defendants Metropolitan Life Insurance Company and Honeywell International Inc. for willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' (Crown Cork and Seal Company, Inc., Honeywell International, Inc., Honeywell, Inc.) asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

## **DEFENDANT'S CONTENTIONS**

### **Defendant Crown Cork & Seal Company, Inc.'s Contentions**

Crown Cork & Seal Company, Inc. ("Crown") has never been in the business of manufacturing, distributing, advertising, selling or installing any asbestos-containing (or other) insulation products, since its incorporation.

In 1963, Crown was the nation's largest producer and seller of metal bottle caps lined with cork, also known as crowns. In 1963, Mundet Cork Corporation ("Mundet Cork") was also a manufacturer of metal bottle caps and, thus, a competitor of Crown in that business, and was

the sixth largest producer and seller of metal bottle caps. On November 7, 1963, Crown entered into an agreement to purchase the majority of the stock of Mundet Cork. The majority shareholder of Mundet Cork, Joseph J. Mundet, had died and his estate had offered his shares for sale. Crown was primarily interested in purchasing the assets of Mundet Cork associated with its competing bottle cap operations.

Consequently, on November 13, 1963, Crown purchased the majority of the outstanding stock in Mundet Cork from the Mundet estate. No Crown stock was exchanged for Mundet Cork's stock. Crown paid the total sum of approximately seven million ($7,000,000) dollars for the Mundet Cork Stock.

Subsequent to Crown's purchase of some of Mundet Cork stock on November 13, 1963, Mundet Cork remained a separate New York corporation until 1966. On February 10, 1966, Mundet Cork was merged with Crown in the State of New York.

At the time of the stock acquisition, Mundet Cork's business included the following relevant divisions: (1) the closure (i.e., bottle cap) division, which held the assets in which Crown Cork & Seal Company was interested; and (2) the insulation division, which, among other things, manufactured, sold, and contracted to install insulation products.

In the summer of 1963, prior to Crown's acquisition of Mundet Cork's stock, Mundet Cork ceased manufacturing insulation products. Immediately after the acquisition of the Mundet Cork stock, Mundet Cork, at the request of Crown, their majority shareholder, began looking for a buyer for the insulation division.

On February 8, 1964, three months after Crown's purchase of Mundet Cork's stock, Mundet Cork sold its insulation division to Baldwin-Ehret-Hill, Inc. ("B-E-H"), a manufacturer and seller of asbestos-containing insulation products. Pursuant to a Bill of Sale and Assignment, B-E-H purchased all of Mundet Cork's insulation product inventory; all of Mundet Cork's insulation contracts; all of Mundet Cork's insulation raw materials; Mundet Cork's accounts receivables relating to its insulation business, including receivables from both product manufacturing and product installation; Mundet Cork's insulation manufacturing machinery, tools, and equipment; the insulation division's branch offices; Mundet Cork's rights, titles, and interest in all insulation contracts; the right to Mundet Cork's trade names and trademarks for use in the manufacture of insulation products; and a negative covenant from Mundet Cork not to compete with B-E-H in the production of magnesia or calcium silicate products. B-E-H also expressly assumed all liabilities and obligations of Mundet Cork arising from and after February 8, 1964, under the relevant Mundet Cork leases, contracts, and performance bonds.

No former employees of Mundet Cork's insulation division and no former officers with Mundet Cork were retained by Crown  All documents and records related to the transferred assets were acquired by B-E-H. It was Crown's intention and understanding that in entering into the Bill of Sale and Assignment with B-E-H on February 8, 1964, Mundet Cork had sold the entire business and product line of the Insulation Division to B-E-H.

Although referred to as a division of Crown for accounting purposes, Mundet Cork remained a separate corporation until February 10, 1966 when it was merged with Crown. Crown's intention in "merging" the remaining Mundet Cork assets into Crown in 1966 was to transfer and consolidate Mundet Cork's residual bottle cap operation assets into Crown  By the time of that "merger", Mundet Cork had long since divested itself of any vestiges of its previous insulation operations.

Crown denies that Plaintiff Paul Espersen was ever exposed to any asbestos containing product manufactured by Mundet Cork Company.  Should plaintiffs prove that Paul Espersen suffered and asbestos related injury, Crown contends that such injury resulted from exposure to asbestos-containing products manufactured, sold, supplied or distributed by companies other than Mundet Cork Company.

## **Other Defendants' Contentions and Defenses**[2]

Defendants each dispute that their acts, omissions or products caused the injuries and damages alleged in Plaintiffs' Complaint and that their products or rendering of services were defective.  Defendants each assert that any failure to warn was not a cause of the injuries and damages alleged in Plaintiffs' Complaint.  Defendants also assert that the conduct, acts, omissions or negligence of third persons intervened and superseded the negligence, responsibility or strict liability, if any, of each Defendant, in causing Mr. Espersen's alleged injuries.  Defendants cannot be liable to Plaintiffs for an amount greater than that represented by the degree or percentage of fault, if any, attributable to each Defendant that produced Plaintiffs' claimed damages.  The proximate cause of the incident giving rise to the action was a use or consumption of the product that was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable or was contrary to any express and adequate instructions or warnings appearing on or attached to the product or on its original container or wrapping, if the injured person knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings.   Some defendants also assert that as suppliers of equipment or products to sophisticated users and/or sophisticated purchasers they cannot be liable to end-users.  Additional defenses are asserted in Defendants' answers to Plaintiff's Complaint and are incorporated herein. Some Defendants allege that they cannot be held liable to Plaintiff for component parts incorporated into their equipment, or for thermal insulation or other asbestos-containing products applied to their equipment by others.  Some Defendants allege that they cannot be liable to Plaintiff as a matter of federal law under *Boyle v. United Technologies Corp.*  Some Defendants assert that their products only contained chrysotile asbestos and that chrysotile did not cause or contribute to Mr. Espersen's alleged mesothelioma, rather that Mr. Espersen's disease was caused by amphibole forms of asbestos.  Defendants assert that they cannot be held liable for damages to the extent that those for whom damages are sought have failed to mitigate damages and that such damages are not recoverable. Defendants also assert the state-of-the-art defense.

---

[2]     The following information was provided by counsel for Honeywell International, Inc.  No other defendants provided additional input into this document.

In addition to the above listed contentions which The Zia Company adopts on its own behalf, The Zia Company contends that Plaintiffs' exclusive remedy against it is as set forth in 42 USC 7385c.  The Complaint alleges that The Zia Company is/was a subcontractor providing services at a DOE facility (Los Alamos National Labs) and therefore The Zia Company contends it is immune from suit in this action under the Energy Employees Occupational Illness Compensation Program Act (EEOICPA).  EEOICPA is a federal law enacted in October 2000 that provides the exclusive remedy to person harmed at DOE facilities by alleged toxic substance.

## **PROVISIONAL DISCOVERY PLAN**

The parties jointly propose to the Court the following discovery plan:

List all witnesses who, at this time, you think will either testify or be deposed, giving their name, title, address and a brief summary of their testimony. It is insufficient to list witnesses' addresses, save for clients, "in care of counsel."

Plaintiffs' Witnesses

**Paul Espersen**
c/o Luke P. Pfeifer
FLINT LAW FIRM LLC
222 E. Park St., Suite 500
Edwardsville, IL 62025
*-Plaintiff*

**Peggy Espersen**
c/o Luke P. Pfeifer
FLINT LAW FIRM LLC
222 E. Park St., Suite 500
Edwardsville, IL 62025
*-Plaintiff*

**Steven Cushing**
Address: Unknown at this time.
Phone: (505) 566-6669
*-Paul Espersen's brother-in-law.*
*-Worked at LANL shortly after Paul left.*

**Barnie Cushing**
Address: Unknown at this time.
Phone: (406) 360-0775
*-Paul Espersen's brother-in-law.*
*-Worked at LANL shortly after Paul left.*

**Bill Cushing**
Address: Unknown at this time.
Phone: (406) 381-4970
*-Paul Espersen's brother-in-law.*
*-Worked at LANL shortly after Paul left.*

**Dick Phillips**
Contact Information: Unknown at this time.
*-Paul Espersen's Supervisor at LANL.*

**Leonard Scott**
Contact Information: Unknown at this time.
*-Paul Espersen's coworker at LANL.*

List all documents which you believe, at this time, will be exhibits at the trial.

- Photographs of Plaintiff Paul Espersen before and after diagnosis of mesothelioma; Paul Espersen's medical records and pathology report; sales records/invoices showing the purchase of asbestos/asbestos-containing products and the delivery of the same to LANL; Contract and detailed work memoranda between Zia Company and LANL; OSHA Regulations concerning asbestos; as to further exhibits, Plaintiff reserves the right to supplement this non-exhaustive list.

List all experts who you believe, at this time, will testify at the trial, giving their name, address, area of expertise, and a brief summary of the anticipated testimony.

Defendant Crown Cork & Seal Company, Inc.'s witnesses and experts

A) WILLIAM DYSON, PH.D.

Workplace Environments, LLC

P.O. Box 49176

Greensboro, NC  27410

Dr. Dyson is a certified industrial hygienist.  If a summary of his testimony and CV are required, counsel will provide them upon request.  Dr. Dyson is expected to testify regarding the state of the art regarding the knowledge of asbestos health hazards, the circumstances of the asbestos exposures claimed, and principles of industrial hygiene as applied to the circumstances of the claimed asbestos exposures.

B) RICHARD KRZYZANOWSKI
c/o Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
P.O. Box 528
Albuquerque, NM  87103

Mr. Krzyzanowski will explain the Crown Cork & Seal Company, Inc. merger with Mundet Cork Corporation, as well as events leading up to and following that merger.  He will also testify concerning the 1989 reincorporation and consolidation of Crown Cork & Seal Company, Inc.  He will testify concerning the 1985 settlement agreement between Crown Cork & Seal Company, Inc. and several insurers determining the aggregate liability insurance of Mundet Cork Corporation available to cover any successor asbestos-related claims arising from Crown Cork & Seal Company, Inc.'s merger with Mundet Cork Corporation.  Mr. Krzyzanowski will testify about Crown Cork & Seal Company, Inc.'s payments and commitments to pay successor asbestos-related claims arising from the Mundet Cork Corporation merger.  He will further testify about Crown Cork & Seal Company, Inc.'s business dealings, including Crown Cork & Seal Company, Inc.'s certificates of authority to do business.  He will testify about the business of Crown Cork & Seal Company, Inc., what it did not include, as well as, what it did, and the acquisition of Mundet Cork Corporation as well as the sale of Mundet Cork Corporation's insulation business.  Mr. Krzyzanowski will also testify about the asbestos claims alleged against Crown Cork & Seal Company, Inc.

C) TIM OURY, M.D., PH.D.
S785 Scaife Hall
3550 Terrace Street
Pittsburgh, PA 15261

Dr. Oury will testify as to the pathological diagnosis of asbestosis, lung cancer, colon cancer, other cancers, and mesothelioma, and the association between asbestos fibers and the alleged disease process involving the plaintiff. He will further testify as to the contribution, if any, of exposure to Defendants' products in the causation of plaintiff's asbestos related disease. Dr. Oury will testify, in cases where sufficient lung tissue is available, as to the burden of asbestos in plaintiff's lungs and its contribution, if any, in causing Plaintiffs asbestos-related disease. At this time, Defendant is unable to determine if Dr. Oury will testify until Dr. Oury has reviewed plaintiff's medical records and pathology materials.

D)   DENNIS J. PAUSTENBACH, PH.D., DABT, CIH
     25 Jessie Street at Ecker Square
     San Francisco, California 94105

Dr. Paustenbach is a board-certified toxicologist and certified industrial hygienist with more than 20 years of experience in occupational health, risk assessment, toxicology, and environmental engineering. His experience includes investigating the health effects of, exposure to, as well as the remediation of, carcinogenic and noncarcinogenic chemicals. He has published approximately 200 peer-reviewed articles and written nearly 40 book chapters in these fields. He also has given many lectures at universities on these issues and has conducted or supervised more than 700 risk assessments related to individuals, contaminated sites, consumer products, and many other scenarios. He has specialized in the areas of industrial and environmental toxicology, occupational health, historical state of knowledge regarding environmental issues, as well as ecological and human health risk assessment.

Dr. Paustenbach will offer opinions based on his professional qualifications, work experience, and knowledge of industrial hygiene toxicology, risk assessment and related fields as well as information he has been or may be provided regarding plaintiff and any alleged exposure to asbestos, including alleged exposure from Mundet Cork products.

Dr. Paustenbach may offer testimony concerning industrial hygiene in general and, in particular, industrial hygiene practices with respect to asbestos exposure in specific industries and crafts. He may also testify as to the exposures at issue or others' exposure to asbestos or other substances. He may testify as to potential of exposure, or lack thereof, of workers outside the immediate zone of use of asbestos containing products. He may testify concerning the development and use of threshold limit values and the promulgation of regulations, both on a state and federal level, concerning the use of asbestos and asbestos exposures in occupational settings. He may also offer testimony concerning air-monitoring/air-testing in in general, and, in particular, air-monitoring for levels of asbestos present in various occupational settings. He may also testify concerning state of the art medical, technical and scientific knowledge at times relevant to this lawsuit with respect to asbestos,

asbestos exposures and related industrial hygiene practices, generally and specifically with respect to exposures associated with the use of asbestos-containing products. He may offer any or all of the following opinions, among others: asbestos-related disease exhibits a dose-response relationship; low airborne concentrations of asbestos, such as those associated with the ambient background environment, are not believed to pose an increased risk of asbestos-related disease; the length, dimension and chemical nature of asbestos fibers are known to play a role in the etiology of disease; regulatory approaches for estimating risks due to exposure to carcinogenic chemicals, including asbestos, rely on dose extrapolation models which are intended not to underestimate the risk and, in nearly all cases, can be expected to significantly over predict the actual risks at doses to which most persons are exposed; from the 1940s to the 1960s results of studies the US Navy conducted of shipyard and ships.

E)   DORSETT SMITH, M.D., F.A.C.P., F.C.C.P., F.A.C.O.E.M.
     Phoenix, Arizona

Dr. Smith is expected to testify regarding a historical review and state of art of medical knowledge and asbestos-related conditions and exposures in general and particularly mesothelioma, including what information might have been included in any warning about the use of asbestos insulation products during the time period of Plaintiff's alleged exposure to Mundet Cork products and the likelihood that Plaintiff was exposed to levels of asbestos that would have prompted any health concern based on information available at the time. He will offer opinions as to the general awareness about asbestos-related disease and the various work forces at risk at various times and the relative significance from a medical perspective of various exposures to the causation of Decedent's death.

F)    PATRICK SZMYT, FORMER SENIOR VICE PRESIDENT OF FINANCE
      AND C.F.O. FOR CROWN, CORK & SEAL, U.S.A. INC.
      c/o Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
      P.O. Box 528
      Albuquerque, NM  87103

Mr. Szmyt is expected to testify regarding the financial aspects of Crown Cork's acquisition of Mundet Cork Corporation and of Mundet's lines of business at the time Crown Cork acquired Mundet stock.

Crown reserves the right to adopt the testimony of any and all experts identified by other defendants in this case, to the extent the testimony of said expert is not inconsistent with the defenses asserted by Crown.

Crown reserves the right to call all treating and/or consulting physicians identified in discovery and reserves the right to call any individual with knowledge of the physical or mental condition of the plaintiff.

    Crown further identifies all witnesses named by any other party and reserves the right to call any such witness in its case.

G)      JOSEPH D. WENDLICK, CIH
          851 South Marine Hills Way
          Federal Way, WA 98003

    Mr. Wendlick is a Certified Industrial Hygienist with knowledge and experience in the area of occupational exposure to asbestos containing products. Mr. Wendlick is expected to testify about the state of industry knowledge concerning asbestos health hazards; industrial hygiene and industrial hygiene practices; the determination of Plaintiff/Decedent's total asbestos exposure; a retrospective exposure analysis; determination of Decedent's exposure to a particular company's products and to all asbestos products; the identification of fiber types in products encountered by Plaintiff/Decedent; work practices that may involve liberation of asbestos fibers; quantification of exposure to asbestos in different trades; an explanation and history of threshold limit values for asbestos; a description of how dust measurements are done at job sites; the levels of exposure to asbestos known to be associated with asbestos-caused diseases; the levels of exposure below which it is thought that asbestos–related diseases will not develop; industrial hygiene literature and medical literature which support that threshold; the work practices in preparing and applying asbestos-containing materials, including asbestos-containing materials and the amounts of dust emitted by each of those operations, based on his experience and his review of the industrial hygiene literature; the methods of identifying fiber types in products; the ability of fibers to remain airborne or settle; factors affecting the transport and settlement of givers; and the effects of control technology on exposures. Mr. Wendlick may also testify regarding articles that reconstruct the exposures experienced by insulators, other shipyard and construction trades and bystanders.

    Crown reserves the right to adopt the testimony of any and all experts identified by other defendants in this case, to the extent the testimony of said expert is not inconsistent with the defenses asserted by Crown.

    Crown reserves the right to call all treating and/or consulting physicians identified in discovery and reserves the right to call any individual with knowledge of the physical or mental condition of the plaintiff.

    Crown further identifies all witnesses named by any other party and reserves the right to call any such witness in its case.

**Defendant Crown Cork & Seal Company, Inc.'s documents that may be used at trial:**

>Crown Cork & Seal Company, Inc. does not possess sufficient information pertaining to plaintiff's claims to identify specific documents, information or tangible things that it may use to support its claims or defenses in this matter.
>
>Crown reserves the right to use at trial any exhibits offered by plaintiff or other parties and any exhibits identified during the course of discovery.

At this point, other defendants cannot identify their fact and/or expert witnesses or documents they may use at trial. The Zia Company did not enter its appearance in this matter until January 2019 and therefore requires additional time to identify its fact and/or expert witnesses or documents they may use at trial and will do so in accordance with the Court's Scheduling Order.

Discovery will be needed on the following subjects:

- *The scope of the work The Zia Company performed at LANL for Regents of the University of California;*

- *The Zia Company's knowledge of the hazards of asbestos during the time Mr. Espersen worked at LANL;*

- *The measures, if any, The Zia Company took to eliminate or mitigate the exposure to asbestos experienced by persons present on site due to the work that The Zia Company performed;*

- *Brand names/trade names of asbestos/asbestos-containing products used by The Zia Company in its maintenance of the LANL facility;*

- *Mr. Espersen's exposure to asbestos at all his places of employment but not limited to just the LANL facility.*

Maximum of **35** interrogatories by each party to any other party. (Responses due **30** days after service).

Maximum of **35** requests for admission by each party to any other party. (Response due **30** days after service).

Maximum of **20** depositions by Plaintiff(s) and **20** by Defendant(s)[3].

Each deposition limited to maximum of **7 (except for Plaintiffs and experts)** hours unless extended by agreement of parties.

Reports from retained experts under Rule 26(a)(2) due:

from Plaintiff(s) by **07/26/2019**

from Defendant(s) by **08/30/2019**

Supplementation under Rule 26(e) due **11/29/2019** *(set time(s) or interval(s))*.

All discovery commenced in time to be complete by **12/02/2019**. Discovery on *(issue for early discovery)* to be completed by **12/02/2019**.

Other Items:  None at this time.

## PRETRIAL MOTIONS

Plaintiffs intend to file: Motions for Summary Judgment, Motions in *Limine*, Daubert Motions, etc.

Defendants intend to file: Motions for Summary Judgment, Motions in *Limine*, Daubert Motions, etc.  The Zia Company also intends to file a Motion to Dismiss pursuant to 42 USC 7385c.

## ESTIMATED TRIAL TIME

The parties estimate trial will require **three weeks (15 trial days, including jury selection)** days/weeks.

____ This is a non-jury case.

__X__ This is a jury case.

---

[3]  The Zia Company does not agree with 20 depositions per party, and believes that no more than 10 fact depositions per side should be allowed without further order of the Court.

The parties request a pretrial conference in **December 2019**.

## SETTLEMENT

The possibility of settlement in this case is considered likely. The parties request a settlement conference after motions for summary judgment have been filed.

## EXCEPTIONS

The Zia Company contends that discovery against it should not be allowed at this time until its Motion to Dismiss filed pursuant to 42 USC 7385c is resolved by the Court. The Zia Company intends to file an appropriate Motion for Protective Order on that basis. To the extent discovery is permitted at this time, The Zia Company believes that no more than 10 depositions per side should be permitted in accordance with Fed.R.Civ.P. 30(a)(2)(A)(i). The Zia Company further objects that it was not afforded an adequate opportunity to participate in the preparation of this Joint Status Report. Counsel for The Zia Company was retained and entered an appearance in this matter on January 3, 2019. Entry of a Scheduling Order is not appropriate against The Zia Company until such time as it has had adequate time under the rules to file its answer or responsive pleading and until its Motion to Dismiss is decided by the presiding court. The Zia Company is immune from suit in this action as a matter of law and allowing any discovery to proceed in this action against The Zia Company is in violation of 42 USC 7385c which is Plaintiffs' exclusive remedy as against The Zia Company.

In direct response to The Zia Company's foregoing exceptions, Plaintiffs submit that discovery in this case should proceed without any delay. Plaintiffs filed this case in this Court on October 18, 2018. A summons comporting with Fed.R.Civ.P. 4 was prepared for The Zia Company and served upon The Zia Company via its registered agent on October 29, 2018.

Pursuant to Fed.R.Civ.P 12(a)(1)(A)(i), The Zia Company had 21 days, or until November 8, 2018, to file an answer or responsive pleading after being served with Plaintiffs' summons and complaint. Through no fault of the Plaintiffs, counsel for The Zia Company did not enter its appearance in this case until January 3, 2019. For counsel of The Zia Company to contend that it was not afforded an adequate opportunity to participate in the preparation of this Joint Status Report is misleading, disingenuous, and unfair. Plaintiffs in this matter should not be prejudiced by having discovery delayed by reason of carelessness and neglect on behalf of counsel for The Zia Company.

      Paul Espersen was diagnosed with malignant mesothelioma, a vicious terminal cancer, on August 30, 2018. He cannot afford any undue delay in this case. It is Plaintiffs' paramount initial discovery objective that Mr. Espersen be afforded the opportunity to give a deposition to preserve his testimony in the likely event that his disease causes his death before the conclusion of this case. Should the Court agree with The Zia Company's position that discovery should be stayed pending the resolution of its motion to dismiss, Plaintiffs would respectfully request that the stay be limited to discovery as to The Zia Company only, to allow discovery to proceed for Plaintiffs and for the other defendants in this case.

APPROVED WITHOUT EXCEPTIONS:

 /s/ Robert P. Warburton _____
For Defendant Crown Cork & Seal Company, Inc.

 /s/ Laura Ackermann _____
For Defendant Honeywell Inc.

 /s/ Tyler Cuff _____
For Defendant Metropolitan Life Insurance Co.

   */s/ Tonn K. Petersen*_____
For Defendant Honeywell International, Inc.


APPROVED WITH EXCEPTIONS

 */s/ Luke P. Pfeifer*_____
For Plaintiffs Paul H. Espersen and Peggy Espersen

 */s/ Justin D. Rodriguez*_____
For Defendant The Zia Company

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing instrument will be served on all counsel via the e-filing system on this the 10th day of January, 2019.

> */s/ Justin R Kaufman*
> Justin R. Kaufman